## EMERSON–BRANTINGHAM IMPLEMENT CO. v. JOHNSON.

(Circuit Court of Appeals, Eighth Circuit. July 2, 1924.)

No. 6434.

1. Appeal and error ⊕⟿1175(7)—Appeals in equity are heard de novo, and determined without remand.

Appeals in equity are heard de novo, and disposed of finally without remanding the cause, except in exceptional cases.

2. Appeal and error ⊕⟿1246—Evidence held to establish that complainant's signature on stay bond was a forgery.

In a suit for cancellation of a stay bond on which complainant's name appeared as surety, and to set aside a sale of his property made thereon, evidence considered, and *held* to sustain his contention that his signature to the bond and also to the justification were forgeries.

Appeal from the District Court of the United States for the District of Nebraska; J. W. Woodrough, Judge.

Suit in equity by Samuel T. Johnson against the Emerson-Brantingham Implement Company. Decree for complainant, and defendant appeals. Affirmed.

E. G. McGilton, of Omaha, Neb. (Sidney W. Smith, of Omaha, Neb., on the brief), for appellant.

Allen G. Fisher, of Chadron, Neb. (Lloyd H. Jordon, of Gordon, Neb., on the brief), for appellee.

Before LEWIS, Circuit Judge, and BOOTH and SYMES, District Judges.

BOOTH, District Judge. This is a bill in equity by appellee, Johnson, to cancel on the ground of forgery, a stay bond on which it is claimed by appellant that Johnson was a surety; also to set aside all proceedings thereon, including an execution sale of land belonging to Johnson. The short facts leading up to the present suit are as follows:

Appellant recovered a judgment on the 12th of September, 1921, in the District Court of the United States for the District of Nebraska, against Joseph J. Ruddy and John R. Sailor, for the sum of $4,996.46. On the 1st of October, 1921, Ruddy and Sailor, pursuant to sections 8989, 8990 and 8992, Rev. Stat. of Nebraska for the year 1913, filed with the clerk of said court a stay bond. The names of appellee, Johnson, and R. B. Sailor appear as sureties on said bond. On the 11th of July, 1922, the judgment not having been paid, appellant caused a writ of execution to be issued out of said court and to be delivered to the marshal, who thereupon levied upon certain land belonging to Johnson; after advertisement, sale of the land was made on the 22d of August, 1922. On the 9th of September, 1922, Johnson filed his complaint in the present suit, alleging that he did not sign said stay bond as surety, nor the justification thereon as such surety, and that his purported signature in each instance was a forgery. Upon the trial the court found that the purported signature of Johnson as surety on the bond was a forgery, but that the signature of Johnson to the justification attached to the bond was genuine; a decree was entered canceling the bond, expunging from the record the apparent lien of appellant upon the lands of Johnson, and enjoining appellant from further proceedings against Johnson upon the bond.

The assignments of error raise two main questions:

: (1) Whether the purported signature of Johnson as surety was a forgery.

[1] (2) Whether Johnson was estopped to deny his purported signature as surety. The case is tried in this court de novo. Unkle v. Wills (C. C. A.) 281 Fed. 29.

1. Briefly outlined, the evidence touching the purported signature of Johnson as surety on the bond was as follows: Johnson testified positively that he did not sign the bond; that he had been asked by Ruddy to sign it, but had refused; that he learned nothing further in regard to the bond until he received a letter, some time in July, 1922, from the attorney for appellant requesting payment from him as surety on the bond; that he replied that he was not on any bond for Mr. Ruddy, and that there must be some mistake; that he heard nothing further in regard to the matter until on

the 25th of August, 1922, he learned that his lands had been levied upon and sold by proceedings upon the bond.

There were no attesting witnesses to the signatures upon the bond. No testimony by Ruddy, one of the principals, was produced upon the trial. It appeared that he had gone to parts unknown, since the execution of the bond. The other principal, John R. Sailor, testified that he did not sign the bond; that he and Ruddy had been partners in business, and were sued as such by the appellant; that his name affixed to the bond had been signed by Ruddy. The other surety, R. B. Sailor, testified that he signed as a second surety after the execution by the principals and after the purported execution and justification by Johnson. The notary public who took the purported justification of Johnson testified that he had no recollection of the transaction, but supposed, from the fact of his signature and his seal upon the justification, that Johnson must have appeared before him and signed the justification. Experts testified both on behalf of appellant and appellee touching the genuineness of the purported signature of Johnson as surety on the bond and of his purported signature on the justification. As usual in such cases, there was a difference of opinion amongst the experts; some of them expressed the opinion that both signatures were Johnson's; others, that both were forgeries; and others, that the signature as surety on the bond was a forgery, but the one on the justification genuine. The great weight of the expert testimony was to the effect that the purported signature of Johnson as surety was a forgery. Photostatic copies of the signatures on the bond and on the justification, as well as photostatic copies of many of Johnson's genuine signatures, were introduced in evidence.

[2] Inspection of the purported signature of Johnson as surety and of his admittedly genuine signatures discloses a marked difference between them, both in the formation of many of the individual letters and also in the general appearance of the signature as a whole. Upon a consideration of all of the evidence bearing upon the question, we are clearly of the opinion that the purported signature of Johnson as surety on the bond was a forgery.

2. The estoppel or ratification upon which appellant relies is based upon the purported signature of Johnson attached to the justification. This signature was found by the court below to be genuine. It is accordingly argued by appellant that, since Johnson signed the justification, he must be held to have ratified the signature of his name to the bond as surety, whether in fact the signature was made by himself or not, or at least that he is estopped to deny that he signed as surety.

In the view we have taken of the case, it becomes unnecessary to pass upon the questions of ratification and estoppel. In our judgment the finding that the signature to the justification was the genuine signature of Johnson is contrary to the great weight of the evidence. On the one hand, we have the certificate of the notary, and the evidence of the notary himself, given on the trial. The certificate reads:

"State of Nebraska, Sheridan County—ss.:

"S. T. Johnson and ———, sureties above named, each being duly sworn, says that he is a freeholder in Sheridan county, Nebraska, and each of us declares upon oath that he is worth the sum of $10,000.00 over and above all debts, exemptions, and liabilities, and that each of us owns in his own name real estate in the state of Nebraska of the value of $10,000 over and above all claims and exemptions and liabilities.

"S. T. Johnson.

"———.

"Subscribed in my presence and sworn to before me this 1st day of October, 1921.

"[Seal.]

I. S. Magowan, Notary Public.

"My commission expires 2/11/1924."

Section 4818, Compiled Statutes of Nebraska 1922, relative to notaries public, provides that the certificate of a notary public "shall be received in all courts of this state as presumptive evidence of the facts therein certified to, * * * provided any person interested in the subject-matter of such certificate * * * may by other evidence contradict the matters and things set forth in such certificate."

Giving the full force of the statute to the certificate of the notary public, we have a prima facie case that Johnson did appear before him and that the signature to the justification is Johnson's. The testimony of the notary adds little or no strength to the statutory presumption. He was not positive that Johnson appeared before him; but he testified that, from the fact of seeing his signature and his seal attached to the justification, he presumed that Johnson was in his presence at the bank at Gordon and signed his name to the justification. He ad-

mitted, however, that there had been a few instances where he had taken acknowledgments without the parties appearing before him. He testified, further, that he had no recollection of the instant transaction, and that he did not even remember whether both sheets of the stay bond were before him when he affixed his certificate, or only the second sheet containing the justification.

. On the other hand, we have the positive testimony of Johnson that he did not sign the justification, and never saw the paper until after his land was levied upon and sold. There is also the testimony of the experts pro and con as to whether the signature attached to the justification was the genuine signature of Johnson; the majority appearing to be of the opinion that it was not. There are also before this court for comparison photostatic copies of the signatures attached to the justification and of the admittedly genuine signatures of Johnson. There must be considered, also, the improbability that Johnson signed the justification, when he had not signed as surety upon the bond. Finally, there is circumstantial evidence which discredits the certificate of the notary. This certificate attached to the purported justification of Johnson bears date October 1, 1921; the date was inserted by the notary public.

Jaeger, deputy clerk of the court at Chadron, where the bond was filed, testified that the bond was presented to him by Ruddy on October 1st with but one signature as surety and one justification, namely, of Johnson; that he told Ruddy that it would be necessary to get another surety, who should also justify; that Ruddy went away, and came back the next day, and said that he had obtained R. B. Sailor as a surety; and that the bond was then received and filed. Jaeger testified that Ruddy was at Chadron, Saturday, October 1st, between 2 and 4 o'clock in the afternoon.

J. R. Sailor, principal on the bond with Ruddy, testified that Ruddy, after he had been to Chadron with the bond, upon his return, hunted him up at Gordon, and told him that the bond would have to have another surety, and asked him to procure one, but that he refused to have anything to do with

it. The certificate of the notary attached to the justification of R. B. Sailor is dated October 1st, and R. B. Sailor testified that, when he signed the bond as surety and his justification, the rest of the bond was already complete.

In view of this uncontradicted testimony, it is evident that, if Johnson signed the justification in the presence of the notary on October 1st, as the certificate recites, it must have been either in the forenoon or very early in the afternoon of that day, because the testimony of R. B. Sailor shows that the Johnson justification was complete before the Sailor justification was made, and the testimony of Jaeger shows that the Johnson justification was on the bond when it was first presented for filing in the early afternoon of October 1st. But there is no evidence that Johnson was in Gordon on the morning or afternoon of October 1st. On the contrary, the testimony of the witness Wood, with whom Johnson was then living, is that he and Johnson went to Gordon on the night of October 1st, arriving there about 7 p. m., and the testimony of Hansen, an entirely disinterested witness, is to the effect that Wood and Johnson were in Gordon on the evening of October 1st. Mrs. Wood also testified that Johnson did not go to Gordon during that week, but that he and her husband did go to Gordon that Saturday night. There is no evidence, and not even a suggestion in the record, that Johnson was in Gordon on October 1st, prior to the evening of that date.

In view of this state of the evidence, we think that the presumption attending the certificate of the notary public was entirely overcome, and that the great weight of the evidence supports the conclusion that Johnson did not sign the justification, but that the signature attached thereto was also a forgery; and we so hold.

· In view of our conclusion that Johnson did not sign either the bond as a surety, or the justification attached thereto, the questions of estoppel and ratification disappear from the case, and the other questions raised by counsel become immaterial.

Decree affirmed.